## 13241. SMITH *et al. v.* MARION HARPER COTTON OIL COMPANY.

Under the contract of sale set out in the petition, the plaintiff was under no duty to ship, without shipping instructions from the defendants, the goods which the contract stated were sold " f. o. b. cars " at the plaintiff's mill, " shipments to go forward " at stated times, " sight draft attached to bill of lading covering amount of invoice against each shipment," nothing being stated as to the point to which the goods were to be shipped or as to delivery to a particular carrier; and, under the allegations of the petition, there was a breach of contract by the defendants, who, although the plaintiff was ready to deliver the goods at the agreed time, and so notified them, and although they were requested to give shipping instructions, failed to give instructions or to call for the goods. The petition sets out a cause of action and the court did not err in overruling the demurrer.

DECIDED JUNE 14, 1922.

Action on contract; from Cobb superior court — Judge Blair. December 3, 1921.

In a petition in two counts Marion Harper Cotton Oil Company sued Smith, Ward & Hicks for breach of contract. From the petition it appears that in September, 1920, the plaintiff agreed to sell and the defendants to ·buy 50 tons of cottonseed meal.

The contract was in the form of a letter of the plaintiff to the defendants, under which was the signed acceptance of the defendants, and the material part of it was as follows: " We beg to confirm the sale to you to-day, through your Mr. Hicks, over the telephone, of 50 tons of C/S meal guaranteed analysis 36 per cent. ammonia, at $53.00 per ton net to us f. o. b. cars our mill here [East Point, Ga.] Shipments to go forward, 25 tons in October and 25 tons in November, 1920; usual terms S/D attached to B/L covering full amount of invoice against each shipment." In October shipping instructions were requested of the defendants by the plaintiff, and at the request of the defendants the time for delivery was extended, the parties agreeing in writing that the " final delivery or shipping date " should be December 31, 1920, " on the entire 50 tons." On December 1, 1920, shipping instructions were again requested by the plaintiff, and at the request of the defendants it was mutually agreed in writing that the contract should be extended to make January 10, 1921, the final date of shipment of the 50 tons of meal. On January 3, 1921, shipping instructions were again requested of the defendants in a letter in which the plaintiff stated that it was prepared to make shipment of the meal and expected to ship it " as per " agreement. The petition alleges: " The defendant received said demand for shipping instructions and totally ignored the same and made no response thereto, and refused to give shipping instructions. . . Plaintiffs were at all times ready, willing, and able to comply with their contract, and were ready, willing, and able to deliver the said meal f. o. b. cars seller's plant, as required by said contract. . . The defendants failed to receive the said meal and failed to take the same f. o. b. cars seller's plant, and failed to give shipping instructions which would have sufficed in the absence of the defendants coming to said plant and receiving the meal f. o. b. cars. . . Plaintiffs show that it was impossible for them to deliver meal f. o. b. cars to the defendants unless the defendants came to the plant to receive the meal f. o. b. cars or else gave shipping instructions covering the same so the plaintiffs would know what point the meal was to be consigned to. . . Plaintiffs further show that the course of dealings between the parties as herein set out amounted to recognition of the obligation of the defendants to give shipping instructions and led the plain-

tiffs to believe that the defendants would give shipping instructions if they would receive the said meal, and justified the plaintiffs in considering the refusal to give shipping instructions as in effect a refusal to receive the said meal." The foregoing allegations are made in each count of the petition. The first count continues as follows: " When the defendants failed to give shipping instructions with regard to said meal, and failed to receive and accept · the same, the plaintiffs wired the defendants that· they would sell the meal for the account of the defendants, said wire being sent January 10, 1921. . . Not hearing from the defendants the plaintiffs did on January 13, 1921, resell the said meal for the account of the defendants through M. C. King Company, recognized brokers and dealers in said commodity for the best price obtainable, and the said best price obtainable was the sum of $1637.50, making a difference between the contract price of $2,650 and the resale price of $1,012.50, which said difference, with interest thereon, plaintiffs are entitled to recover from the defendants and pray judgment therefor." The second count, after alleging refusal to accept the meal, as above, continues as follows: " Plaintiffs further show that the contract price for said meal was $2,650. . . Plaintiffs further show that the market price of said meal at the time and place of delivery when the defendants breached their contract was the sum of $1,637.50, and that the difference between the contract and the market is $1,012.50, for which amount with interest the plaintiffs pray judgment."

The defendants demurred to the petition and to each count, and in the demurrer contended: that no cause of action was set forth; that there was a misjoinder of causes of action, and that the petition was multifarious in that it contained two counts in which different and inconsistent remedies were sought; that the petition was an effort to vary the terms of a written contract; that it appeared that the plaintiff had not carried out its part of the contract; that it did not appear that the defendants had breached their part of the contract; that the second count failed to show that the plaintiff retained the goods contracted for, and failed to show the market value of the goods at the time and place for delivery.

*Campbell Wallace,* for plaintiffs in error, cited: Civil Code

(1910), § 4131; 19 Cyc. 1082; 35 Cyc. 108, 174; 108 *Ga.* 533, 535; 8 *Ga. App.* 588; 10 *Ga. App.* 157; 15 *Ga. App.* 142; 14 *Ga. App.* 381; 87 *Ga.* 333; 17 *Ga. App.* 643.

*Little, Powell, Smith & Goldstein, J. Z. Foster,* contra, cited: 138 N. C. 105 (3 Am. & Eng. Anno. Cases, 903); 119 *Ga.* 851; 123 *Ga.* 707; 126 *Ga.* 167; 5 *Ga.* 172; 46 *Ga.* 278; 72 *Ga.* 712; 39 *Ga.* 604; Williston on Contracts, §§ 1293, 1318, 450; 6 L. R. A. (N. S.) 928, notes; 2 Anno. Cas. 814; 13 C. J. 546; 15 *Ga. App.* 601; 13 *Ga. App.* 780; Civil Code (1910), § 4267.

BLOODWORTH, J. The petition sets out a cause of action, and the court did not err in overruling the demurrer thereto.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*